# First National Bank of Lincoln, Appellee, v. Lulu Sand= meyer et al., Executors, Appellants.

EVIDENCE—*when stockholder not incompetent by virtue of interest.* The test as to whether such a witness is in fact incompetent, the adverse party suing in a representative capacity, is, was he a stockholder at the time of testifying; if he was not then he is competent. It is immaterial whether he was a stockholder at the time of the transaction involved unless it can be shown that he parted with his stock for the purpose of qualifying as a witness.

Appeal from the Circuit Court of Logan county; the Hon. T. M. HARRIS, Judge, presiding. Heard in this court at the November term, 1910. Affirmed. Opinion filed October 20, 1911.

KING & MILLER and BEACH & TRAPP, for appellants.

C. EVERETT SMITH and BLINN & COVEY, for appellee.

MR. PRESIDING JUSTICE PHILBRICK delivered the opinion of the court.

Frank Frorer during his lifetime was president of the First National Bank of Lincoln. He died June 8, 1908. During his lifetime, he, together with Frank Hoblit, was interested in a corporation known as the Lincoln Excelsior Company; these two parties controlled the finances of that company and furnished the means with which to operate it. On August 12, 1902, the Lincoln Excelsior Company borrowed from J. H. Miller $5,000, and, as evidence of the indebtedness, made and executed to him its note, dated August 12, 1902, due one year after date, with five per cent interest; this note was signed by Frank Frorer and Frank Hoblit. On August 12, 1903, this note was endorsed without recourse by J. H. Miller. The First National Bank of Lincoln became the owner of this note, and claimed to be the owner at the time of the death of Frank Frorer. After his death, this note was made the basis of a claim filed against the estate and on trial in the Circuit Court, on appeal from the County Court, a judgment was rendered against the estate for the amount of the note, to reverse which the executors of the estate prosecute this appeal.

The grounds urged as a cause of reversal are that the court permitted one Frank Hoblit to testify as a witness in the cause, appellants insisting that he was an incompetent witness; also that the court improperly admitted evidence that after the payment of the note it was again put in circulation, and also that the judgment was contrary to the law and the evidence.

The record discloses that Frank Frorer, the president, and Frank Hoblit, the cashier, of the First Na-

tional Bank of Lincoln, frequently borrowed money of
the bank for the benefit of enterprises in which they
were interested; but the only question involved in this
controversy is whether at the time of the death of
Frank Frorer he was indebted to the First National
Bank of Lincoln. While the claim is pretended to be
made specifically on the note of August 12, 1902, if
upon the hearing upon the claim filed, the evidence dis-
closed that the deceased was indebted to the First Na-
tional Bank of Lincoln for any amount, then the mat-
ter of the form of the claim was immaterial, and if
Frorer was so indebted, it is immaterial whether this
note represents that indebtedness or not, and the trial
court had full and ample power to determine this ques-
tion, and if the indebtedness existed, then it was the
duty of the court to render judgment for whatever
that amount was found to be. It is conceded by all
parties that this note of date August 12, 1902, was the
property of the bank and owned by it on August 31,
1907, that on that date the bank owned other claims for
which Frorer and Hoblit were liable, that the notes
which the bank held as representing these claims were
long past due and in order to avoid carrying past due
paper, Frorer and Hoblit borrowed from the National
Bank of the Republic in Chicago $10,000 and gave their
note for that amount, which was paid December 17,
1907. With the funds thus borrowed from the National
Bank of the Republic, the funds of the First National
Bank of Lincoln were credited with the amount of the
note of August 12, 1902, and another note known as
the Gordon Mill & Grain Company note, and these two
notes were checked off from the books of the First Na-
tional Bank as paid and no longer carried as assets
of that bank. When the note given by Frorer and
Hoblit to the National Bank of the Republic became
due that bank charged the account of the First
National Bank of Lincoln with the amount due on this

note and forwarded the note to the First National Bank of Lincoln as paid, Frorer being the president and Hoblit the cashier of the First National Bank of Lincoln and the National Bank of the Republic their correspondent with whom they carried an account in Chicago. The deposit of the First National Bank of Lincoln with the National Bank of the Republic having been reduced by the amount of this note, it became necessary for the First National Bank of Lincoln to replenish its assets to this amount. In order to do this, the note in question, which had always remained in the possession of Hoblit, the cashier, who was co-surety on the note, was again placed upon the records of that bank as an asset. Hoblit has no recollection that Frorer .ever directed this to be done but testifies that Frorer knew it was done; it was done without any direction or advice from the Lincoln Excelsior Company, the principal maker of the note. Prior to the time this note was replaced in the bank as an asset, another note which Hoblit now contends and describes as a memorandum note, of date July 8, 1907, was placed in the envelope containing the pretended asset of the bank of August 12, 1902, but Hoblit testifies that this note in fact never had any existence, that the note of August 12, 1902, was the real asset in the bank, yet the records show that this accommodation note was secured for the purpose of having an asset in the bank which was not past due so that the bank examiner would not decline to pass it as an asset. This accommodation note of July 8, 1907, was not signed by either Frorer or Hoblit and is the note of the Lincoln Excelsior Company; this note was entered upon the books of the bank as an asset and was given the number 8650, and the number of the note of August 12, 1902, was 8299. Appellants insist that when the $10,000 was borrowed from the National Bank of the Republic upon the note signed by Frorer and Hoblit and the

funds placed to the credit of the First National Bank of Lincoln and the note in question, together with the Gordon Grain & Mill Company note, checked off from the books of the bank as an asset and the note taken and held by Hoblit as one of the sureties of the note, that this was payment and satisfaction of that note and having once been paid it could not again become a valid obligation against the makers by the act of Hoblit as disclosed by this record, and having once been paid it is no longer an obligation which this estate is liable to pay.     But the record shows that the $10,000 borrowed by Frorer and Hoblit from the National Bank of the Republic was for the use and benefit of Frorer and Hoblit and was placed in the funds of the First National Bank of Lincoln for the purpose of relieving that bank, of which those two men were the principal officers and responsible for its conduct, of carrying paper contrary to the national banking laws, and that when the National Bank of the Republic took from the deposits of the First National Bank of Lincoln in its hands the amount of this note, treating it as the note of the First National Bank of Lincoln and returning as paid the note signed by Frorer and Hoblit, that the First National Bank of Lincoln by this transaction paid that amount of money for the use of Frorer and Hoblit and for which they became liable to the First National Bank of Lincoln.     This then created an obligation which Frorer and Hoblit were bound to pay, and conceding that the transaction was a payment of that note of August 12, 1902, if Hoblit was a competent witness, then Frorer is indebted to the First National Bank of Lincoln to the amount due upon this note.     There is no pretense that the First National Bank of Lincoln was in any manner ever repaid or has ever received any amount to reimburse it for the amount charged against its account by the National Bank of the Republic, on account of the note executed

by Frorer and Hoblit. Thomson v. Black, 200 Ill. 465; Wolf v. Beaird, 123 Ill. 585.

Upon the question of the competency of the witness Frank Hoblit, the ground of incompetency urged upon this record is that he was a stockholder in the First National Bank of Lincoln at the time when this transaction took place and at the time of the death of Frank Frorer and that although he has assigned all his stock in the bank and is now residing in the state of Missouri and has no connection or interest whatever in the assets of the First National Bank of Lincoln, the assignment does not render him a competent witness. The trial court refused to exclude the evidence on the ground of incompetency and it is solely upon his evidence that this judgment must be sustained if at all. The test of his competency is not whether Hoblit was a stockholder in the bank at the time of these transactions but whether he was such stockholder at the time of the hearing. At that time he held no stock and was not interested in the bank and there is no attempt to show that he assigned his stock in the bank for the purpose of being able to qualify as a competent witness. On objection to the competency of a witness it is incumbent on the objector to show the incompetency of the witness. With the testimony of Hoblit, the record justifies the finding of the trial court that the estate of Frank Frorer, deceased, is indebted to the First National Bank of Lincoln to the amount of the judgment rendered against it, and the judgment is affirmed.

*Affirmed.*

Mr. Justice Puterbaugh took no part in the consideration of this case.